# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| Mark Haahr, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CV 50102 |
| | ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In September 2013, Mark Haahr had a heart attack and a stroke in short succession. He was then 48 years old and had been working as a janitor for a number of years. After being released from the hospital, he participated in a rehabilitation program and, over the next half year or so, saw various doctors including a neurologist and cardiologist. His condition improved over time, although he did injure his shoulder in a fall in December 2013 and had a second fall on his left side in January 2014. The primary lingering problem from the stroke has been a persistent left-sided weakness, or hemiparesis in the medical parlance, which plaintiff alleges requires him to use a cane. This allegation is the core of his disability claim, although he also suffers from an assortment of other conditions, including diabetes and autoimmune hepatitis.

The administrative law judge ("ALJ") agreed that plaintiff has "ongoing post-stroke residual symptoms," but found that he still could do light work. R. 27. Relevant here, this conclusion means that the ALJ apparently believed that plaintiff could walk or stand for six

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

1

hours in an eight-hour day and that he could do so without his cane.[2] Plaintiff's main argument is that the ALJ failed to justify these findings. They are important because, under the medical vocational rules (the "grid rules"), plaintiff must be found disabled if he could only do sedentary work. In other words, this case turns not on the broader question of whether plaintiff could work, but on the much narrower question of whether he could do prolonged walking and standing. This Court agrees that this issue requires further analysis. But the Court is not determining that plaintiff is disabled.

The Court begins with the cane issue. At the hearing, plaintiff testified that he had been using a four-prong or quad cane since he was released from rehabilitation and used it "every day" to lean on when standing and to walk.[3] R. 52. Plaintiff's medical records contain only a few references to his use of the cane, and it is not clear whether his doctors formally prescribed one. In her decision, the ALJ made the following statement about the cane use, which was part of the credibility analysis:

> [T]he claimant testified he must use a cane for stability and balance; however December 2013 records indicate he was only using the quad cane for longer walks (Ex. 4F/1) and no cane is observed or mentioned after January 2014 (Ex. 7F/2).

R. 26.

One initial problem is that the statement is ambiguous. The ALJ did not explicitly state her conclusions. The ALJ may have believed that plaintiff no longer needed a cane after January 2014. But another possible interpretation is that he only needed it for longer walks. Although the latter interpretation might cast doubt on plaintiff's general credibility, because it would be

---

[2] The ALJ did not explicitly state these conclusions, but they are implicit in her finding that plaintiff could do light work and in the vocational expert's testimony that plaintiff could only do sedentary work if he needed to use a cane.
[3] He brought the cane to the hearing. R. 51.

2

inconsistent with his testimony that he uses a cane for any type of walking, it would tend to support his claim that he could not do prolonged walking.

Another concern with the ALJ's brief analysis is that it rests on the inference that plaintiff would have continued to mention to his doctors, at every visit, that he was still using a cane. Plaintiff argues that this is unrealistic because his later visits were mostly for other conditions. Relatedly, it is also possible that the left-sided weakness was viewed as a permanent condition that could not be fixed through further medical treatment. The ALJ indirectly touched on this idea with the following statement in the narrative history: "By May 2014, the orthopedist felt the claimant had reached maximum medical improvement for his left adhesive capsulitis and that any residual paralysis was likely secondary to his stroke[.]" R. 25. Although this statement refers to the shoulder injury as having reached "maximum medical improvement," it arguably suggests the same was true for the overall left-sided weakness. If so, then it is possible that plaintiff had simply accepted the fact that he would need to use a cane for the rest of his life and thus believed that it was not worth further discussion at every doctor visit. To be clear, there is no concrete evidence supporting this theory or really any theory. The key point is merely that the ALJ did not explore this issue in sufficient detail. Along this line, the Court notes that the ALJ did not call a medical expert at the hearing. On remand, the ALJ should do so because such an expert could not only provide an overview of plaintiff's stroke-related and other impairments, but could specifically address whether the left-sided weakness was a permanent condition and whether any treatments were available. Such testimony may also help clarify the extent of the ongoing left-sided weakness.[4]

---

[4] The Court recognizes the benefit of hindsight, the cost of medical experts and the crushing workloads placed on ALJs, but a medical expert's opinion in this case would have provided the critical medical opinion needed to support an affirmance.

In sum, the Court finds that the ALJ failed to fully explore the issue of plaintiff's cane use. But even if the Court were to overlook this problem, the fact still remains that plaintiff indisputably had *some* "ongoing" problems with left-sided weakness. This raises a very basic question. Given this ongoing weakness, what evidence shows that plaintiff could do prolonged walking and standing? The current record does not provide a direct answer. The Government argues that the ALJ's general rationales provided an indirect answer. This Court is not persuaded.

First, the ALJ found plaintiff's daily activities were inconsistent with his general allegation of "wholly debilitating symptoms." R. 26. The ALJ stated as follows:

> Just three months after his stroke, the claimant was able to take care of his pets, reported no problems with his personal cares, could cook "anything" on a daily basis, do laundry and other household chores without problems and went grocery shopping once a week for a couple of hours (Ex. 3E). The claimant also testified he works out 2-3 times per week at the gym and he rides a stationary bike daily (Ex. 8F/1 and per testimony). These rather vigorous activities of daily living are inconsistent with claims of wholly debilitating symptoms.

*Id.* As an initial observation, this description leaves out several qualifying statements plaintiff made about these activities. For example, the ALJ omitted plaintiff's testimony that his girlfriend did the shopping while plaintiff sat in some type of scooter. R. 61 ("I sit down [] while she does the grocery shopping. I get that little—you know buggy whatever up front while she goes shopping."). Cherrypicking aside, these activities do not on their own demonstrate that plaintiff could do prolonged walking. The most probative activities are working out and riding the stationary bike. But no details are given about how long these activities were undertaken, or what they involved. Riding the stationary bike, for example, may not have been as difficult, in terms of balance, than walking or standing. The ALJ can flesh out those issues on remand.

4

Second, the ALJ noted that one of plaintiff's doctors stated that plaintiff could return to work. *See* R. 497 (Dr. Kurian: "[Plaintiff] still has weakness on the left side, especially the left upper extremity. I have urged him to try and return back to work if possible, but asked for a different job if possible."). But as plaintiff points out, this statement does not address the case-dispositive issue of whether plaintiff could do light work. The doctor may have been assuming that plaintiff would do sedentary work. The doctor presumably was unaware of the highly technical Social Security grid rules. The doctor's vague statement thus could support either side's position. Again, the ALJ can further develop this fact on remand.

Third, the ALJ noted various "normal" examination findings. The Government argues that they show that she believed that the objective evidence was minimal. Although it is true that the ALJ mentioned several normal findings, the ALJ at the same time acknowledged in each instance (to the ALJ's credit) that plaintiff's left-sided weakness still remained a problem despite the overall improvement. *See, e.g.*, R. 26 ("physical exams are generally unremarkable *but for* the persistent left sided hemiparesis") (emphasis added).

Fourth, the ALJ summarized the findings of Dr. Lopez, the consultative examiner. Although the ALJ did not explicitly state that this evidence affirmatively supported her decision, it is possible that the ALJ believed this to be the case. In any event, it is worth noting that Dr. Lopez observed that plaintiff "could walk up to 50 feet without support, although his gait was antalgic with the use of a quad cane for confidence." *Id.*

For the foregoing reasons, the Court finds that the above rationales are insufficient. This conclusion is supported by *Thomas v. Colvin*, 534 Fed. Appx. 546 (7th Cir. 2013), which involved similar facts and arguments. In that case, the Seventh Circuit remanded based on the claimant's argument that "the ALJ failed to address a critical issue: whether she needs a cane in

5

order to stand and walk for six hours of an eight-hour workday." *Id.* at 547 (referring to this as an issue of "heightened importance" in light of the grid rules). The Court noted that the ALJ only included a "lone reference" to the cane issue. *Id.* at 550. The Court rejected the argument, similar to the one the Government makes here, that a finding that the claimant "generally" lacked credibility was sufficient to resolve the issue. *Id.* The Court also rejected another of the Government's present arguments, which is that the claimant had no "medical documentation" for the cane. *Id.* The Court also stated that the finding by the consultative examiner—that the claimant could walk 50 feet without a cane but still had an antalgic gait and used a cane for "support and confidence"—was insufficient to constitute substantial evidence. *Id.* at 547-58, 51 ("We have previously concluded, under nearly identical facts, that walking for 50 feet without a cane—a 'brief excursion'—does not demonstrate an ability to stand for 6 hours.") (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). Notably, Dr. Lopez's findings were almost exactly the same as the *Thomas* examiner (*e.g.* both observed an antalgic gait and both described the cane use as being needed only "for confidence"). In short, *Thomas* supports a remand.[5]

Having found that a remand is required, the Court need not address plaintiff's remaining arguments, which are not persuasive. Plaintiff's principal other argument is that the ALJ failed to consider the aggregate effect of his various impairments, including those that were found to be non-severe at Step Two, such as his anxiety, diabetes, and past use of alcohol. This Court agrees with the Government that this argument was conclusory. The ALJ also should also call a medical expert to address the issues discussed above. Although this Court finds that a remand is required, the Court is not indicating that benefits should be awarded or that clear answers necessarily will

---

[5] In light of *Thomas*, this Court is sympathetic to the Administration and the ALJs in these circumstances. All claimants are not "entitled" to a functional capacity exam and a medical expert in all of these types of cases.

be found, but a greater effort should be made to explore these issues and then a more complete explanation should be provided.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.

Date: October 3, 2018        By: _____
                                                     Iain D. Johnston
                                                     United States Magistrate Judge